**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

JUNE BROWN                                                                          PLAINTIFF

V.                                    4:10CV001637 JMM

CITY OF JACKSONVILLE,
PAUL MUSHRUSH and
CHERYL ERKEL                                                                    DEFENDANTS

<u>ORDER</u>

Pending is the Motion for Summary Judgment filed by the Defendants.  Plaintiff has

responded and the Defendants have replied.  For the reasons set forth below, Defendant's Motion

for Summary Judgment is GRANTED.

    I.    <u>Facts</u>

On November 30, 1998, the City of Jacksonville hired the Plaintiff to work in the

Purchasing and Finance Department (the "Department") as a purchasing agent.  In 1999, the

Plaintiff was promoted to the position of Purchasing Manager.  Paul Mushrush ("Mushrush")

was the Director of Finance for the City of Jacksonville, and the Plaintiff's supervisor at all

relevant times.  Cheryl Erkel ("Erkel") was promoted to the title of Assistant Director of Finance

in December of 2007, and assumed a supervisory role over the Plaintiff from that date forward.

Prior to December of 2007, Erkel had worked as an accountant and then as Finance Manager in

the Department of Finance for the City of Jacksonville.

During October of 2006 and the first three months of 2007, Plaintiff alleged that

Mushrush, began making discriminatory and derogatory comments to her based on age and

disability.  Plaintiff claims that on several occasions, Mushrush referred to her as, "old woman."

On one occasion, he said, "Hey old woman, we moving slow," in reference to her hip problem.

On another occasion, he referred to her hip  problem and her age by stating that she was "such an old woman, can't even straighten up."  Plaintiff states that he also greeted her with the salutation of "Hey, Crip."  (Pl.'s Aff., ECF No. 43-1, p. 6).

On May 15, 2007, the Plaintiff filed a Charge of Discrimination with the local office of U.S. Equal Employment Opportunity Commission ("EEOC") against the City of Jacksonville. In her EEOC Charge, the Plaintiff alleged discrimination on the basis of her age, sex, and disability.      In November of 2007, the Plaintiff met with Mushrush and the Director of Human Resources, Jill Rogers ("Rogers"), regarding the Plaintiff's work hours.  At this meeting on November 11, 2007, Mushrush informed the Plaintiff that she could satisfy her duties in a 40 hour work week; Murshrush instructed the Plaintiff that she was to observe work hours of 8:00 a.m. to 5:00 p.m. Monday through Friday, and that she was not allowed in the Department office outside that time frame without Mushrush's prior approval.  For the years proceeding this meeting, the Plaintiff had complained to Mushrush that she was "spending at least 50-60 hours a week in the office ... and [t]his does not include the two plus hours I spend at home most evenings reviewing, processing, and signing documents."  (Mushrush Dep., ECF No. 33-26, p. 49: 6-11).

On January 11, 2008, Mushrush issued a written employee counseling form to the Plaintiff regarding her work hours after discovering the Plaintiff at the office after 5:00 p.m. on January 3, 2008, without his prior approval.  In response to the employee counseling, the Plaintiff filed a written grievance with Erkel on January 13, 2008, for unfair and retaliatory treatment by both Erkel and Mushrush.  On January 31, 2008, Erkel sent the Plaintiff a written response to the Plaintiff's grievance denying the Plaintiff's allegations.  Erkel stated in her

response that the Plaintiff's allegations of a hostile and retaliatory work environment were attributable to the Plaintiff's own actions.

On March 11, 2008, Erkel sent an e-mail to the Plaintiff regarding concerns Erkel had about apparent delays the Department experienced in processing accounts payable items.  Erkel stated in the e-mail that, for the relevant time periods, she discovered eight items that the Department processed late and 31 items she believed the Department could have processed in a timelier manner.

On March 24, 2008, Erkel sent a second e-mail to the Plaintiff regarding concerns Erkel had about apparent delays the Department experienced in processing accounts payable items. Erkel stated in the e-mail that, for the relevant time periods, she discovered 46 items that the Department processed late and 12 items that she believed the Department could have processed timelier.  The Plaintiff did not respond to Erkel's concerns until March 31, 2008 by e-mail. Plaintiff admitted that there had been delays in processing items in accounts payable and that she was having difficulty in performing other duties associated with purchasing.

In addition to her original charge, Plaintiff provided the EEOC additional allegations including, the fact that she was disciplined on January 11, 2008 by Mushrush and that this written warning constituted retaliation.  The following year, on May 8, 2008, the EEOC issued a Dismissal and Notice of Rights letter instructing the Plaintiff that she could file suit within 90 days of receipt of the notice.  The Plaintiff, following receipt of this notice, did not bring suit based on the allegations contained in her May 15, 2007 EEOC Charge.

On June 4, 2008, Erkel sent Plaintiff an e-mail addressing ways in which the Plaintiff could meet the requirements of her job more efficiently including, but not limited to, suggestions

on how to reorganize her filing system and how to communicate more effectively.  To this end, Erkel added "It would be great if you could attend a seminar on time management as it has helped me manage my time to be more cost effective."  (Letter from Erkel, ECF No. 33-13).  On June 9, 2008, the Plaintiff sent an e-mail to Erkel in response to the above message, stating that she did not believe that she could meet the purchasing requirements in a 40 hour work week.  Erkel responded to the Plaintiff's concerns the following day.  Erkel's message to the Plaintiff reiterated the importance of time management in meeting purchasing requirements.  In response to the Plaintiff's concerns regarding the number of hours in a work week, Erkel's message stated as follows:  "You had stated you were working 70 hours a week to get your job done.  In analyzing reports from that time to until present, where you work 40 hours a week, proves that the process is working since the number of items had decreased."  *Id.*  On June 20, 2008, Erkel provided the Plaintiff with suggestions on how to efficiently organize daily tasks, and on June 27, 2008, Erkel sent an e-mail to all City employees to notify them of changes in purchasing designed to improve efficiency.

Between August and October 2008, Plaintiff had a total hip replacement to alleviate her chronic hip joint problems.  The Plaintiff used 449.5 hours, eleven (11) weeks and one (1) day, of FMLA leave between the dates of August 9 and October 18, 2008.  Mushrush and Erkel were aware of Plaintiff's hip problems because she walked with a cane and periodically had physician appointments.

On December 3, 2008, the Plaintiff received and signed a copy of the City of Jacksonville's job description for Purchasing Manager, and was given a list of efficiency goals developed by Erkel.  Effective December 29, 2008, the Purchasing Department was merged into,

and became a part of, the Finance Department.

On April 8, 2009, Erkel issued the Plaintiff a written employee counseling for "Failure in Performance of Duties" for failing to meet deadlines, processing bids, and projects in a timely manner as well as for failing to maintain accurate records.  On April 9, 2009, the Plaintiff filed a written internal grievance stating that the employee counseling was issued in retaliation for the EEOC Charge that the Plaintiff filed in May of 2007.  On April 13, 2009, Plaintiff filed an EEO complaint with the City of Jacksonville against the City, Mushrush and Erkel, stating that she had been discriminated against and retaliated against for filing the previous May 2007 EEOC Charge.

On April 27, 2009, the City's EEO Officers sent a letter to the Plaintiff informing her that they had completed the investigation into her complaint and that they had been unable to find evidence supporting her claims of discrimination and retaliation.

On or about May 21, 2009, Jill Ross and Erkel conducted an internal investigation into the Plaintiff's complaint of discrimination and retaliation.  The entire Finance Department, including the Plaintiff, was interviewed as part of the internal investigation.

On May 26, 2009, Plaintiff filed an EEOC Charge against the City of Jacksonville.  The Plaintiff alleged that her Charge was based on retaliation, stating in pertinent part, "I believe I am being subjected to closer scrutiny with regard to the performance of my duties than similarly situated co-workers that have not filed complaints, harassed, intimidated and disciplined in retaliation for filing previous and current EEO complaints."  (Charge, ECF No. 33-30).

On June 8, 2009, Erkel and Ross concluded the internal EEO investigation.  Erkel and Ross determined that the Plaintiff had created a hostile work environment.  On June 9, 2009,

Mushrush made the decision to terminate the Plaintiff for "Failure in Performance of Duties" and "Failure in Personal Conduct."

Plaintiff filed suit in this Court on November 10, 2010 after receiving her Dismissal and Notice of Rights letter from the EEOC on August 17, 2010.  Plaintiff claims she was discriminated against by the Defendants based upon her age in violation of the Age Discrimination in Employment Act and based upon her disability in violation of the Americans with Disabilities Act.  She claims she was terminated by the City of Jacksonville in retaliation for exercising her rights under Title VII and making complaints regarding her discriminatory treatment in the workplace.  She alleges that the Defendants interfered with her FMLA rights and retaliated against her for exercising her rights under FMLA.  She claims Mushrush and Erkel retaliated against her in violation of the Arkansas Civil Rights Act because she filed internal and EEOC grievances against them.

II.    Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual

6

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no
> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue.  If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

III.    Discussion of the Law

Plaintiff makes claims alleging age and disability discrimination, retaliation in violation

of Title VII, FMLA, and ACRA, and interference under FMLA.  In her Brief in Support of the

Response to the Motion for Summary Judgment ("Brief"), Plaintiff appears to lump all of her

claims into one argument.  In fact, several pages of the Brief, are written in the first-person as if

written by the Plaintiff *pro se.*  (Pl.'s Brief, ECF No. 46, p. 2-8).  Therefore, the Court has spent

many hours trying to discern whether Plaintiff has abandoned some of the claims made in her

Complaint and added claims in her Brief.[1]  In order to be thorough, the Court will consider all of

the claims set forth in the Complaint and the Brief.  The Court also notes that the Brief is littered

with sentences which have no relevance to this case.  For example, "Here, Plaintiff alleges both a

disparate treatment and disparate impact, but Defendant seeks to limit Plaintiff's discovery

unduly."  *Id.*at 21.  Two lines later Plaintiff writes, "Plaintiff has produced sufficient evidence to

justify the requested discovery, and this Court should order the Defendants to respond

accordingly."  *Id.*  There has been no discovery dispute in this case at any time.  The final

paragraph of the Brief states, "Wherefore, Plaintiff requests that she be granted leave to file the

Second Amended Complaint and Request for Jury Trial, and for all other appropriate relief."  *Id.*

at 22.  Plaintiff filed her Second Amended Complaint six months before this Brief was filed.

 A. <u>Age Discrimination</u>

 Plaintiff claims that she was discriminated on the basis of her age when she was not

promoted to the position of Assistant Director of Finance in December 2007 and when she was

terminated.  To establish a prima facie case of age discrimination, Plaintiff must show that (1)

she was at least 40 years old; (2) she was terminated; (3) she was meeting her employer's

reasonable expectations at the time she was terminated; and (4) she was replaced by an

individual who was substantially younger.  *Haigh v. Gelita USA, Inc.,* 632 F.3d 464, 468 (8th

Cir. 2011) (citing *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 642 (8th Cir. 2008)).  Once

---

[1]  Plaintiff's counsel should be on notice that the Court is not inclined to undertake this effort again in his cases.  *See Gilbert v. Des Moines Area Community College,* 495 F.3d 906, 915 (8th Cir. 2007) ("The district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.")

the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* If the employer does so, the plaintiff must show that the employer's proffered reason was pretext for discrimination. *Id.* "At all times, the plaintiff retains the burden of persuasion to prove that age was the "but-for" cause of the termination." *Rahlf v. Mo-Tech Corp., Inc.,* 642 F.3d 633, 637 (8th Cir. 2011) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 2350 (2009)).

There is no dispute that Plaintiff was over forty years old and that she was terminated. Defendants contend, however, that Plaintiff was not meeting their reasonable expectations at the time of her termination and that she was not replaced. The Plaintiff has come forward with evidence to show that she was meeting the Defendants' expectations. She was employed by the City for eleven (11) years. *See McGinnis v. Union Pacific R.R.,* 496 F.3d 868, 875 n.3 (8th Cir. 2007). Further, Defendants stated on the record that Plaintiff would probably not have been fired but for the investigation into her allegations. In other words, while Plaintiff may not have been the most efficient worker, Defendants were not planning to fire her for her poor performance. She was meeting their basic needs as the Purchasing Manager.

As Defendants argue, Plaintiff is unable to show that she was replaced by someone substantially younger than her. The Eighth Circuit has not yet found this failure to be an absolute bar to establishing a prima facie case of age discrimination. *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034 (8th Cir. 2007). It is, however, evidence which may be considered by the Court. *Id.*

If the Court assumes Plaintiff has set forth a prima facie case of age discrimination,

Plaintiff has still not proven that the Defendants' reasons for terminating her, *i.e.* poor performance coupled with creating a hostile work environment, are merely pretext for age discrimination.  Plaintiff has presented the following evidence on the issue of age discrimination: the statements made by Mushrush in 2006, three years prior to her termination; the limitation on her work hours to 40 hours per week; and emails regarding her work efficiency.

In contrast, the Defendants have provided evidence that Mushrush is older than the Plaintiff.  (Ex. K, ECF No. 33-11).  Plaintiff was hired in 1998 when she was 46-47 years old. *Id.*  The Eighth Circuit has "noted it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination."  *Haigh v. Gelita USA, Inc.*  632 F.3d 464, 470 (8th Cir. 2011) (quoting *Fitzgerald v. Action, Inc.,* 521 F.3d 867, 877 (8th Cir. 2008)).  Further, Plaintiff admitted that she was unable to do her job within the 40 hour work week and that Defendants' internal EEO investigation found that Plaintiff was the cause of stress in the workplace for her co-workers.  Based upon all of this evidence, the Court finds that Plaintiff has failed to prove that the Defendants' reasons for terminating her were a pretext for age discrimination.

Plaintiff also contends that Defendants failed to promote her to the position of Assistant Director of Finance was because of her age.  This claim also fails.  Cheryl Erkel was promoted to the title of Assistant Director of Finance in December of 2007.  "The ADEA requires the filing of an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the act of discrimination. . . ."  *Dorsey v. Pinnacle Automation Co.,* 278 F.3d 830, 835 (8th Cir. 2002) (citing 29 U.S.C. § 626(d)(2)).  Plaintiff filed EEOC charges in May 2007 (prior to the promotion) and May 2009.  (Pl.'s Aff., ECF No. 43-1).

10

Therefore, Plaintiff's claim that she was discriminated against when Mushrush chose Erkel for the promotion to Assistant Director of Finance in December, 2007 is time barred. *See also Cardenas v. AT & T Corp.*, 245 F.3d 994, 998 (8th Cir. 2001) (noting that the plaintiff must show that he is qualified for the promotion).

      B.    <u>Sex Discrimination</u>

To establish a prima facie case of Title VII sexual discrimination, Plaintiff must prove that she (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of the protected class. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). Plaintiff's sex discrimination claim fails because she has not provided any evidence that similarly situated men were more favorably treated by the Defendants.

      C.    <u>Disability Discrimination</u>

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, Plaintiff must show "(1) that [she] has a disability within the meaning of the ADA; (2) that [s]he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that [s]he suffered an adverse employment action due to a disability." *Tusing v. Des Moines Independent Community School Dist.,* 639 F.3d 507, 518 (8th Cir. 2011) (internal quotations omitted).

"The ADA defines a disability as: (A) a physical or mental impairment that substantially

limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Duello v. Buchanan County Bd. of Sup'rs* 628 F.3d 968, 972 (8th Cir. 2010) (quoting *Kozisek v. County of Seward, Neb.*, 539 F.3d 930, 934 (8th Cir. 2008)). The relevant statutory definition of disability is: "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual...." 42 U.S.C. § 12102(2)(A). According to the regulations that guide the interpretation of the ADA, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. *See Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 679 (8th Cir. 2001) (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). An impairment "should be considered substantially limiting only if an individual is significantly restricted as to the condition, manner or duration under which ... the average person in the general population can perform that same major life activity." *Gretillat v. Care Initiatives,* 481 F.3d 649, 652-53 (8th Cir. 2007).

The Court is unable to find any evidence in the record regarding Plaintiff's alleged disability in the eight months that she was employed by the Defendants after her surgery, *i.e.* whether she was substantially limited in her ability to walk after her surgery. The adverse employment action taken by the Defendants was Plaintiff's termination. There is no evidence regarding Plaintiff's hip or the extent of her limitations at that time. The district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support

the nonmoving party's claim." *Gilbert v. Des Moines Area Community College,* 495 F.3d 906, 915 (8th Cir. 2007) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)).

Moreover, if the Court assumes Plaintiff has set forth a prima facie case of discrimination based upon a disability, Plaintiff has not shown a genuine dispute that Defendants' reasons for terminating her, *i.e.* poor performance coupled with creating a hostile work environment, were merely pretext for discrimination.

     D.    <u>FMLA Interference and Retaliation</u>

It is undisputed that Plaintiff took twelve weeks of FMLA leave between August 2008 and October 2008 because of hip problems.  Plaintiff contends that the Defendants "conduct" from the time of her leave until her termination was due to her FMLA leave.  (Complaint, ECF No. 21, p. 8).  "Accordingly, all defendants have interfered with her use of FMLA leave and retaliated against her." *Id.*

"Confusion often arises as to whether an employee's FMLA claim 'is really about interference with his substantive rights, not discrimination or retaliation.  The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir. 2006) (quoting *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)).  The Court finds that Plaintiff's FMLA claim is one of retaliation, not interference.  There is no evidence or allegation that the Defendants denied, impeded, or questioned Plaintiff's FMLA leave.

"The FMLA prohibits employers from discriminating against an employee for asserting

his rights under the Act." *Id.* at 1051.  To establish a prima facie case of retaliation under the

FMLA, a plaintiff mush show (1) she engaged in a statutorily protected activity; (2) she suffered

an adverse employment action; and (3) a causal connection exists between the adverse action and

the plaintiff's exercise of her FMLA rights.  "Although not dispositive, the time lapse between

an employee's protected activity and the employer's adverse action is an important factor when

evaluating whether a casual connection has been established."  *McBurney v. Stew Hansen's*

*Dodge City, Inc*.  398 F.3d 998, 1003 (8th Cir. 2005) (quoting *Smith v. Allen Health Sys., Inc*.,

302 F.3d 827, 833 (8th Cir. 2002)).

In *McBurney*, the court found that a six-month lapse between the plaintiff's return from

FMLA leave and the adverse employment action diluted any inference of causal connection.  *Id.*

The *McBurney* court also cited *Smith* where it held that a two-month interval between protected

activity and termination diluted any inference of causation such that the temporal connection

could not justify a causal link as a matter of law.  *Id.*  In this case, Plaintiff was terminated eight

months after her return from FMLA leave.

Further, Defendants were counseling Plaintiff regarding her performance problems prior

to the start of her FMLA leave.  Poor performance was one of the stated reasons for Plaintiff's

termination.  The fact that the Defendants perceived Plaintiff to have job performance issues

both before and after her FMLA leave combined with the eight month gap in time tends to

disprove any discriminatory intent on their part.  Therefore, the Court finds that Plaintiff has

failed to make a prima facie case of retaliation under the FMLA.

E.    Retaliation under Title VII and ACRA

Retaliation is properly analyzed under the same legal framework whether brought under

14

Title VII or ACRA.  *Barber v. C1 Truck Driver Training*, *LLC,* 656 F.3d 782, 792 (8th Cir.

2011).  Plaintiff alleges that she was terminated in retaliation for filing internal grievances and

EEOC charges against Mushrush and Erkel.  She claims that she never been disciplined prior to

the filing of her first EEOC Charge in 2007.

　　　To establish a prima facie case, Plaintiff must show that (1) she engaged in a protected

activity, (2) she suffered an adverse employment action, and (3) there was a causal connection

between the protected activity and the adverse employment action.  *Jackson v. United Parcel*

*Service, Inc.,* 643 F.3d 1081, 1088 (8th Cir. 2011).  There is no dispute that Plaintiff filed

internal grievances and EEOC Charges alleging discrimination.  She was terminated from her

employment.  However, the causal connection between Plaintiff's protected actions and the

termination is tenuous.

　　　Assuming that Plaintiff has stated a prima facie case, the Court again finds that

Defendants have proffered legitimate, non-discriminatory reasons for Plaintiff's termination.

Defendants terminated Plaintiff at the conclusion of an internal EEOC investigation by EEO

Officers Joe Bratton and Peggy Stallings. [2]  In a letter to Plaintiff dated April 27, 2009, Bratton

and Stallings stated:

> In gathering information during our investigation, we were unable to find evidence to
> support your allegations of discrimination and retaliation in the work environment.  After
> interviewing potential witnesses and gathering all available records, we found there is no
> documentation to support your current allegations. . . .  No witness was found to support
> the charge that you have been treated with discourtesy or disrespect by your supervisors
> or that a hostile environment exists within your workplace.  We believe that you may be
> confusing constructive criticism and instruction as retaliation. . . .

---

　　　[2]  Bratton works for the City of Jacksonville in the Fire Department and Stallings works
in the Police Department.

(Letter to Brown, ECF No. 33-21, p. 1).  As a result of the investigation, Jill Ross, Director of Human Resources for the City, sent a memo to Mushrush which concluded: "It is our position that Ms. Brown has, though her own actions and inactions, created a hostile work environment within the Finance Department, violating of [sic] Section 35 of the City of Jacksonville Policy Manual."  (Memo, ECF No. 33-22).

"It has become a commonplace for this court to observe, and it observes again here, that the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995) (citing *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir.1995);  *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994);  *Beith v. Nitrogen Products, Inc.*, 7 F.3d 701, 703 (8th Cir. 1993);  *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1166 n.8 (1985)).  There is insufficient evidence that Defendants' decision to terminate Plaintiff involved intentional discrimination.  Therefore, Plaintiff's claim for retaliation under Title VII and the ACRA is dismissed.

IV.   Conclusion

Defendant's Motion for Summary Judgment (Docket # 31) is GRANTED.  Plaintiff's Motion to Strike (Docket # 51) is DENIED.  The Clerk is directed to close the case.  The trial scheduled for April 23, 2012 is cancelled.

IT IS SO ORDERED this 24th day of February, 2012.

James M. Moody
United States District Judge

16